CO 243 (Rev. 5/85)
ONY Web 5/99

# MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

B 02-170

| United States District Court | District |
|---|---|
| | SOUTHER DISTRICT OF TEXAS |

| Name of Movant | Prisoner No. | Case No. |
|---|---|---|
| Eliaquin Duarte Herrera | BOP-11295-179 | 1:01CR00349-001 |

| Place of Confinement |
|---|
| EDEN DETENTION CENTER P.O. BOX 605 TEXAS 76837 |

6-02CV 072 C

UNITED STATES OF AMERICA    V.    ELIAQUIN DUARTE HERRERA

United States District Court
Southern District of Texas
FILED

SEP 0 3 2002

Michael N. Milby
Clerk of Court

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS.

2. Date of judgment of conviction OCTOBER 5, 2001.

3. Length of sentence 46 MONTHS PRISON TERM SENTENCE.

4. Nature of offense involved (all counts) ALIEN UNLAWFULLY FOUND IN THE UNITED STATES AFTER DEPORTATION, HAVING BEEN PREVIOUSLY CONVICTED OF AN AGGRAVATED FELONY, IN VIOLATION OF 8 U.S.C. §§ 1326(a) AND 1326(b). 20 YEARS IMPRISONMENT AND/OR $250,000 FINE 3 YEARS SRT AND $100.00 SPECIAL ASSESSMENT.

5. What was your plea?   (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED

SEP 3 '02

CLERK U.S. DISTRICT COURT
Deputy

If you pleaded not guilty, what kind of trial did you have?   (Check one)
   (a) Jury ☐
   (b) Judge only ☐

Did you testify at the trial?
Yes ☐   No ☒

Did you appeal from the judgment of conviction?
Yes ☐   No ☒

243 (Rev. 5/85) SDNY Web 5/99

If you did appeal, answer the following:

(a)  Name of court _____

(b)  Result _____

(c)  Date of result _____

). Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
Yes ☐     No ☒

. If your answer to 10 was "yes," give the following information:

(a)  (1)  Name of court _____

     (2)  Nature of proceeding _____

     _____

     (3)  Grounds raised _____

     _____

     _____

     _____

     _____

     (4)  Did you receive an evidentiary hearing on your petition, application or motion?
     Yes ☐     No ☒

     (5)  Result _____

     (6)  Date of result _____

(b)  As to any second petition, application or motion give the same information:

     (1)  Name of court _____

     (2)  Nature of proceeding _____

     _____

     (3)  Grounds raised _____

     _____

     _____

     _____

     _____

43 (Rev. 5/85) SDNY Web 5/99

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☒

(5) Result _____

(6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐        No ☐
(2) Second petition, etc.       Yes ☐        No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

2. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.
(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

3 (Rev. 5/85) SDNY Web 5/99

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: _DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL._

Supporting FACTS (state *briefly* without citing cases or law) _MY COUNSEL NEVER TOLD ME OR ADVICED ME THAT WHAT WAS HIS DUTYS ON MY BEHALF. AND ALL I CAN REMEMBER IS THAT HE WARNED ME THAT IF I DON'T PLEAD GUILTY SOONER, THEY WOULD NOT HAVE MERCY ON ME AND THE JUDGE WILL GIVE ME (20) TWENTY YEARS IN PRISON._

B. Ground two: _DENIAL OF RIGHT OF APPEAL._

Supporting FACTS (state *briefly* without citing cases or law) _I WAS ALONE IN COURT AND NO ONE IN THE COURT ROOM TOOK A MINUTE TO TELL ME THAT I COULD APPEAL MY SENTENCE AT THE TIME IT WAS LATER ON THAT I FIND OUT THAT I CAN DO IT. THEN I WROTE TO MY COUNSEL AND I REQUESTED HIM THAT I NEED SUBMIT AN APPEAL AND HE ANSWERED ME THAT IT WAS TO LATE, BECAUSE HE UNDERSTOOD THAT I DO NOT WANT TO APPEAL, WHEN HE EVEN NOT GOT IN CONTACT WITH ME._

C. Ground three: _SENTENCE EXCEEDING THE MAXIMUM STATUTES._

Supporting FACTS (state *briefly* without citing cases or law) _MY FORTY SIX (46) MONTHS SENTENCE IS EXCEEDING THE MAXIMUM PUNISHMENT FOR THE UNLAWFULLY RE-ENTRY. ACCORDING THE LAW. IF IS CONVICTED IT COULD BE PUNISHED TO THE MAXIMUM, AND THAT IS TWO (2) YEARS IMPRISONMENT AND/OR $1000.00 FINE OR BOTH._

43 (Rev. 5/85) SDNY Web 5/99

D. Ground four: _MY DEPORTATION WAS HELD WITH OUT RELIEF._

Supporting FACTS (state *briefly* without citing cases or law) _WHEN I WAS DEPORTED. NO ONE EXPLAIN TO ME THAT IF I DO RETURN TO THE UNITED STATES, I WILL BE CHARGED WITH A FELONY CONVICTION JUST FOR CROSSING THE BORDER ILLIGALLY. AND NO ONE EXPLAIN THE SERIOUSNESS OF THE CONSEQUENCES._

3. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _ON MY CASE. I USED TWO GROUNDS LISTED IN THIS FORM. THE OTHER TWO GROUNDS ARE THE ONE'S THAT I KNOW IT COULD BE APPLICABLE IN MY CASE._

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐   No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _____

(b) At arraignment and plea _____

(c) At trial _____

(d) At sentencing _____

43 (Rev. 5/85) SDNY Web 5/99

(e) On appeal _____

_____

(f) In any post-conviction proceeding _____

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

_____

5. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
   Yes ☐   No ☒

7. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
   Yes ☐   No ☒

   (a) If so, give name and location of court which imposed sentence to be served in the future: _____

   _____

   _____

   (b) Give date and length of the above sentence: _____

   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
       Yes ☐          No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
C3201 S40        Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

*August 26, 2002*
(date)

_____
Signature of Movant

# FEDERAL PUBLIC DEFENDER
## Southern District of Texas
### Brownsville Division
600 E. Harrison Street, #102
Brownsville, Texas 78520

**FEDERAL PUBLIC DEFENDER**                                    Telephone: (956) 548-2573
**ROLAND E. DAHLIN II**

**Supervisory Assistant:**                                    Fax: (956) 548-2674
**JEFFREY L. WILDE**

March 8, 2002

Mr. Elianquin Duarte Herrera, 11295179
K207 c/o C.C.A. T. Don
Hutto P.O. Box 1063
Taylor, Texas 76574

    In response to your letter of February 26, 2002, I write to inform you that your case was not appealed because I understood from you that you did not want to appeal the sentence.

    It is now too late to appeal, and there is nothing more I can do in this case.

    I enclose herewith a copy of the Judgment and Presentence Investigation Report which you requested.

    Good luck.

                                                Sincerely,

                                                TIMOTEO E. GOMEZ
                                                Assistant Federal Public Defender
                                                Southern District of Texas

Page #1

AUG-30-02 11:23 FROM:US DISTRICT CLERK          ID:8064727639          PAGE 13/19

```
                                          U.S. DISTRICT COURT
                                      NORTHERN DISTRICT OF TEXAS
                                             FILED
                                        ┌─────────────────┐
                                        │   AUG 30 2002   │
                                        └─────────────────┘
                                      CLERK, U.S. DISTRICT COURT
                                      By _____
                                                Deputy
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

ELIAQUIN DUARTE HERRERA,      )
                             )
            Movant,          )
                             )
v.                           )          CIVIL ACTION NO.
                             )          6:02-CV-072-C
UNITED STATES OF AMERICA,     )
                             )
            Respondent.      )

## ORDER

Movant has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

by a Person in Federal Custody in the United States District Court for the Northern District of Texas,

San Angelo Division.

A § 2255 motion must be filed in the court that sentenced the movant. 28 U.S.C. § 2255; *Ojo*

*v. Immigration and Naturalization Service*, 106 F.3d 680, 683 (5th Cir. 1997). Movant clearly states

that he pleaded guilty and was sentenced in the United States District Court for the Southern District

of Texas.

Accordingly, the Court finds that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody should be and it is hereby transferred to

the United States District Court for the Southern District of Texas, Brownsville Division.

SO ORDERED.

Dated August 30, 2002.

                                   _____
                                   SAM R. CUMMINGS
                                   United States District Judge

Certified a true copy of an instrument
on file in my office on 8/30/2002
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

TDIS

U.S. District Court
Northern District of Texas (San Angelo)

CIVIL DOCKET FOR CASE #: 02-CV-72

rrera v. United States                          Filed: 08/28/02
signed to: Judge Sam R Cummings
nand: $0,000                     Nature of Suit:  510
nd Docket: None                  Jurisdiction: US Defendant
:# in other court: None

use: 28:2255 Motion to Vacate Sentence

IAQUIN DUARTE HERRERA        Eliaquin Duarte Herrera
    petitioner              #11295-179
                            [COR LD NTC pse] [PRO SE]
                            Eden Detention Center
                            PO Box 605
                            Eden, TX 76837


  v.


ITED STATES OF AMERICA
    respondent

Certified a true copy of an instrument
on file in my office on 8/30/2002
Clerk, U.S. District Court,
Northern District of Texas
By _Michele Robb_ Deputy

TERNAL USE ONLY: Proceedings include all events.
02cv72 Herrera v. United States

                                                                  TDIS

28/02    --        **Set Pro Se Flag (blr)

28/02    1         MOTION by petitioner Eliaquin Duarte Herrera to vacate
                   under 28 U.S.C. 2255 (underlying conviction in SD/TX) (blr)

28/02    2         (Petition to Vacate Sentence Pursuant to 28 USC 2255)
                   MEMORANDUM by petitioner Eliaquin Duarte Herrera in support
                   of [1-1] motion to vacate under 28 U.S.C. 2255 (underlying
                   conviction in SD/TX) (blr)

30/02    3         ORDER to transfer case to Southern District of Texas,
                   Brownsville Division; (Signed by Judge Sam R. Cummings )
                   Copies to counsel: 8/30/02  Page(s) 1 (mrr)

30/02    --        Interdistrict transfer  to District of Southern District of
                   Texas, Brownsville Division (mrr)

30/02    --        Original file, certified copy of order & docket report
                   mailed to Southern District Texas, Brownsville Division (mrr)

30/02    --        **Set Transfer flag (mrr)

At my deportation hearing it was believed that I was not eligible for any relief from deportation and I therefore waived my deportation with a number of other aliens at this hearing. The immigration court found that I had made no application for relief, and ordered me "removed," i.e., "deported." Had I been aware of my rights as recognized by the Supreme Court in their St. Cyr decision, I could have raised such rights under Title 8, United States Code § 212(c), § 212(h) or § 244(a) of the Immigration and Naturalization Act.

I respectfully request this Court permit this petition to be reviewed, and hopefully granted on the following arguments in light of the Supreme Court's decision in I.N.S. v. St. Cyr.[1] St. Cyr exposes a clear violation of due process with those window of cases wherein a person is deported after implementation of the 1996 immigration reforms contained in the AEDPA and IIRIRA, but whose deportation-eligible conviction occurred prior to those 1996 enactments. This is because the general practice by courts and counsel at the time of petitioner's deportation on · 9~ / 3 ~ 00 was that the 1996 reforms eliminated the Attorney General's authority to permit waivers of deportation, a common practice before the 1996 reforms. The Supreme Court in St. Cyr disagreed and refused to permit the 1996 reforms to be applied retroactively to defendants whose convictions occurred prior to the changes in the law.

---

[1] I.N.S. v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271 (2001).

2

## ARGUMENT

### a) Due Process and the Supreme Court's decision in *St. Cyr*

> There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 48-51, 70 S.Ct. 445, 453-455, 94 L.Ed. 616, 627-629; *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140, 143; *see Russian Fleet v. United States*, 282 U.S. 481, 489, 51 S.Ct. 229, 231, 75 L.Ed. 473, 476. **Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.** *Wong Yang Sung, supra; Wing Wong, supra.*

*Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890 (1976) (emphasis supplied). Against this backdrop, the due process arguments raised in this motion to dismiss must be understood in light of the Supreme Court's recent decision in *I.N.S. v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271 (2001), and its earlier decision in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

Stating it was "troubled" by the notion that the government could use the results of administrative proceedings to establish an element of a criminal offense, the Supreme Court ruled that any defendant charged under § 1326 has the right to mount a collateral attack on the lawfulness of a prior deportation order before such order may be used to prove the deportation element of a § 1326 charge. *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

The Court went on to hold that such boot-strapping would only comport with due process of law if the alien was afforded the opportunity, in the context of the later criminal

3

prosecution, to challenge procedural deficiencies that may have occurred in the earlier deportation. The Court observed that "if the statute (§ 1326) envisions that a court may impose penalties for any reentry, regardless of how violative of the rights of the alien the deportation proceeding may have been, such a statute does not comport with the constitutional requirements of due process". *Id.* at 837.

Thus, under *Mendoza-Lopez*, if an immigration procedure, regulation, or policy falls below the due process requirements of the United States Constitution, the deportation which results may not be used as evidence against the accused in a subsequent criminal prosecution for illegal reentry. Petitioner argues his right to due process was violated in the underlying deportation proceedings held on _9 -13 - 00_ .

According to the discovery provided by the government, I was deported or removed from the United States on or about _9 - 13 - 00_. This expulsion from the United States, which is the trigger for the present § 1326 prosecution, was the result of a deportation hearing before an immigration judge, which I contend were fundamentally unfair. This is because the law believed to be in effect at the time of my deportation was the newly enacted AEDPA and IIRIRA. These laws did not give an alien relief from deportation if his offense was deemed to be an aggravated felony. This position by the I.N.S. was acknowledged in the arguments made to the Supreme Court in *St. Cyr*.

> In the Attorney General's opinion, these amendments have entirely withdrawn his § 212(c) authority to waive deportation for aliens previously convicted of aggravated felonies. Moreover, as a result of other amendments adopted in AEDPA and IIRIRA, the Attorney General also maintains that there is no

4

judicial forum available to decide whether these statutes did, in fact deprive him of the power to grant such relief. As we shall explain below, we disagree on both points.

*St. Cyr*, 533 U.S. at 297, 121 S.Ct. at 2277-78.

Yet, in the Supreme Court's case of *St. Cyr*, an alien whose prior conviction that caused their deportation was prior to the changes in the law in 1996, such defendants who entered pleas of guilty were deemed to continue to have the same types of relief from deportation that were available at the time of their plea, irrespective of the 1996 changes in the law.

Before the effective dates of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), section 212(c) of the Immigration and Nationality Act of 1952 was interpreted to give the Attorney General broad discretion to waive deportation of certain aliens. For example,

> Prior to IIRIRA's passage in 1996, § 244(a) of the Immigration and Nationality Act (INA) controlled suspension of deportation relief. While suspension of deportation to aliens under the INA, an alien was first required to satisfy several requirements including being "physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application." 8 U.S.C. § 1254(a)(1).

*Sibanda v. I.N.S.*, ___ F.3d ___, 2002 WL 393855 (10th Cir., decided March 14, 2002).

As the Supreme Court found in *St. Cyr*, "the class of aliens whose continued residence in this country has depended on their eligibility for § 212(c) relief is extremely large, and not surprisingly, a substantial percentage of their applications for § 212(c) relief have been

5

granted[2]." *St. Cyr*, 533 U.S. at 295-296.

The large class of aliens depending on § 212(c) relief was reduced in 1996 by § 401 of the AEDPA, which identified a broad set of offenses for which convictions would preclude such relief; and by IIRIRA, which repealed § 212(c) altogether, and replaced it with a new section excluding from relief anyone convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3). However, as found by the Supreme Court in *St. Cyr*, these changes should have been inapplicable to my deportation as my plea of guilty to this offense occurred in *11-14-95* before the change in the law in 1996.

After having lived legally in the United States for a period of greater than seven years, I was deported on *9-13-00*. Additionally, my sentence was less than 5 years. This sentence would not have made me ineligible for discretionary relief under the then existing law[3] because the 1990 amendment to § 212(c) required the alien to have served, not just be sentenced,[4] to a term of imprisonment of at least five years. Here, I was sentenced to *3 4 years in prison*

---

[2] *See, e.g.,* Rannik, The Anti-Terrorism and Effective Death Penalty Act of 1996: A Death Sentence for the 212(c) Waiver, 28 Miami Inter-Am. L. Rev. 123, 150, n. 80 (providing statistics indicating that 51.5% of the applications for which a final decision was reached between 1989 and 1995 were granted); *see also Mattis v. Reno*, 212 F.3d 31, 33 (C.A.1 2000) ("[I]n the years immediately preceding the statute's passage, over half the applications were granted"); *Tasios*, 204 F.3d, at 551 (same). . . .

[3] "In 1990, Congress amended § 212(c) to preclude from discretionary relief anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years. § 511, 104 Stat. 5052 (amending 8 U.S.C. § 1182(c))." *St. Cyr*, 533 U.S. at 297, 121 S.Ct. at 2277.

[4] *See Buitrago-Cuesta v. I.N.S.*, 7 F.3d 291, 296 (2nd Cir 1993), citing *Matter of Ramirez-Somera*, No. A-38780688, 1992 WL 301623, 1992 BIA LEXIS 19, Interim

*5 years* well below the 5 year threshold.  Thus, I never served a term of imprisonment of *suspended* - at least five years on an aggravated felony, assuming *arguendo* such offense qualified as an aggravated felony under the definition of that day.

The AEDPA was enacted in late April of 1996, while the IIRIRA was enacted in late September of 1996, with parts of it made effective April 1, 1997.  Here, the removal, *i.e.*, deportation, proceedings in my case occurred on *9 -13- 00*, with deportation actually occurring on *9 - /3 - 00*.  As here, the removal proceedings were commenced well after the effective dates of the AEDPA and IIRIRA.  Under either scenario, both St. Cyr and I were eligible for a waiver of deportation under the immigration law in effect when we were convicted of their offense that made us deportable.

In *St. Cyr*, the Attorney General argued the newly enacted laws (AEDPA and IIRIRA) withdrew any authority for it to grant relief from deportation.  Disagreeing with the Attorney General, the Supreme Court reasoned as follows:

> Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in Jideonwo's and St. Cyr's position agreed to plead guilty. [] Now that prosecutors have received the benefit of these plea agreements, agreements that were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief, it would surely be contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations," *Landgraf*, 511 U.S., at 270, 114 S.Ct. 1483, to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief. []

---

Decision: 3185 (BIA August 11, 1992) ("*Ramirez* stands solely for the proposition that under § 511, the judge cannot rely on how much time an alien will serve in prison, but must consider only how much time an alien has served.").

7

*St. Cyr*, 533 U.S. at 323-324, 121 S.Ct. at 2292 (footnotes omitted).

The Supreme Court ultimately held "§ 212(c) relief remains available for aliens, like petitioner, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326, 121 S.Ct. at 2293. This holding in *St Cyr* would also hold true for other similar forms of relief permitted pursuant to immigration law applicable at the time I pleaded guilty to my conviction in 03-25-97.

Having now found the new (AEDPA and IIRIRA) restrictions on relief from deportation did not apply to removal proceedings brought against me, the question becomes did the immigration judge violate my due process rights when it failed to advise me of my rights to relief from deportation. In *Muro-Inclan*,[6] the Ninth Circuit specifically found:

> INS regulations require that a person facing deportation be advised of the possibility for relief from deportation. 8 C.F.R. § 240.49(a) ("The immigration judge **shall** inform the respondent of his or her apparent eligibility to apply for . . . [a waiver of deportation] and shall afford the respondent an opportunity to make application therefor during the hearing.")[7]  This Court has repeatedly

---

[5] It should be noted that although the *St. Cyr* case dealt with § 212(c) relief, petitioner appears also to be eligible for relief pursuant to § 244(a) (suspension of deportation), or § 212(h) (family hardship exception).

[6] 249 F.3d 1180 (9th Cir. 2001) (dealing with § 212(h) relief under the family hardship exception to deportation).

[7]

> The Appellant cites to 8 C.F.R. § 240.11(a)(2), not 8 C.F.R. § 240.49(a). The relevant language of the two provisions is nearly identical. "The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits

held that this provision is "mandatory." *See Arrieta*, 224 F.3d at 1079; *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).

*Muro-Inclan*, 249 F.3d at 1183 (emphasis supplied). The Ninth Circuit went onto hold the "[f]ailure to so inform the alien [of his eligibility for relief] is a denial of due process that invalidates the underlying deportation proceeding." *Id.* at 1183-1184. Such a position appears to find support in the Fourth Circuit which said the following:

> In *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68, 74 S.Ct. 499, 98 L.Ed. 681 (1954), the Supreme Court vacated a deportation order because of the violation of a procedural regulation, and the *Accardi* case has come to stand for the proposition that administrative agencies may not take action inconsistent with their internal regulations when it would affect individual rights.

*In re United States*, 197 F.3d 310, 315 (4th Cir. 1999) (re: internal policies of the Department of Justice surrounding the protocol surrounding application of the death penalty). Although the government was able to quash subpoenas from the defense in that case, such decision was not on the merits, but due to defendant not having made a sufficient showing of entitlement to relief to permit obtaining such discovery. *Id.* at 316.

However, unlike the internal DOJ policies sought in *In re United States*, the regulations in the present case are not internal policies, but law codified in the Code of Federal Regulations. Moreover, they are mandatory in nature requiring the immigration

---

enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 240.11(a)(2). However, 8 C.F.R. § 240.49(a) is contained in subpart E of section § 240, which applies to "proceedings commenced prior to April 1, 1997." Appellant's 1997 deportation hearing occurred on January 3, 1997.

9

judge to advise the alien of his or her right to relief prior to obtaining any waiver. As the record in the present case establishes, the immigration judge removed, *i.e.*, deported me without a proper explanation of my rights, which the immigration judge believed were abolished under the new law, a clear violation of their own regulations and due process.

b) Petitioner not procedurally barred from bringing constitutional claim.

In *Muro-Inclan*, the government argued the defendant was barred from collaterally attacking the underlying deportation order because 1) he had validly waived his right to appeal; and 2) he had failed to exhaust his administrative remedies. *Id.* at 1182-1183. The Ninth Circuit rejected such a position by the government and responded in the following manner:

> "In order for the waiver to be valid, however, it must be both 'considered and intelligent.'" *Arrieta*, 224 F.3d at 1079, citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Such a waiver is not "considered and intelligent" when "the record contains an inference that the petitioner is eligible for relief from deportation," but the Immigration Judge fails to "advise the alien of this possibility and give him the opportunity to develop the issue." *Arrieta*[,] 224 F.3d at 1079, quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 422-23 (9th Cir. 1989).
> . . .
>
> However, as discussed directly above, due process requires that such a waiver of appeal be "considered and intelligent." *Arrieta*, 224 F.3d at 1079. The exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of deportation proceeding when the waiver of right to an administrative appeal did not comport with due process. *See United States v. Garza-Sanchez*, 217 F.3d 806, 808 (9th Cir. 2000) (for a waiver of appeal to be valid, "such a waiver must be 'considered and intelligent.'") (internal citations omitted); *United States v. Andrade-Partida*, 110 F.Supp.2d 1260, 1269 (N.D.Cal. 2000) (holding that the exhaustion requirement of 8 U.S.C. § 1326(d) should be "waived . . . because defendant was not adequately informed of his right to

appeal to the BIA. Because of the IJ's error, defendant unintelligently waived his administrative remedies.") []

*Muro-Inclan*, 249 F.3d at 1182-1183 (footnote omitted).

Moreover, one cannot raise constitutional challenges in deportation proceedings. Therefore, failing to raise them in the forum of an Immigration Court cannot amount to a failure to exhaust one's administrative remedies. The following passages support such a position.

Because the Board of Immigration Appeals has no jurisdiction to adjudicate constitutional issues, the plaintiffs' failure to raise their challenge at the administrative level does not deprive this court of jurisdiction.

*Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir. 1994), *citing Hernandez-Rivera v. INS*, 630 F.2d 1352, 1355-56 (9th Cir. 1980).

Neither an Immigration Judge nor the Board of Immigration Appeals, in the course of a deportation proceeding, can enter an order voiding an alien's deportation in response to a constitutional objection.[]

*Dastmalchi v. INS*, 660 F.2d 880, 886 (3rd Cir. 1981) (footnote omitted).

It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer. *Matter of C-*, 20 I&N Dec. 529 (BIA 1992). Therefore, even if we were to perceive a constitutional infirmity in the unambiguous statute before us, we would be without authority to remedy it. *See, e.g., Matter of Lazarte*, Interim Decision 3264 (BIA 1996) (Schmidt, Chairman, concurring). . . .

*In re Fuentes-Campos*, 21 I. & N., Dec. 905, 1997 WL 269368 (BIA 1997).

[B]ecause the INS is not competent to hear the constitutional claims raised by the Proposed Fourth Amended Complaint, there is no genuine opportunity for adequate relief through the administrative process and pursuing that process would be futile. Accordingly, this case falls within recognized exceptions to

11

the exhaustion requirement.

*Kai Wu Chan v. Reno*, ___ F.Supp. ___, 1997 WL 122783, *11 (S.D.N.Y., 1997)

Here, there is a clear violation of due process and its own regulations when the immigration judge fails to advise the group of aliens of their rights to relief from deportation. Here, petitioner was eligible for relief, but was never advised it was available to him, or any of the other aliens present at the *en masse* deportation hearing.

Although the Supreme Court in *Mendoza-Lopez* declined to specifically enumerate "which procedural errors are so fundamental that they may functionally deprive the alien of judicial review, [it] requir[ed] that the result of the hearing in which they took place not be used to support a criminal conviction." *Mendoza-Lopez* at 839, n. 17.

A comparison between this case and *Mendoza-Lopez* points out how fundamentally unfair my deportation proceeding was as I was eligible for relief under the pre-AEDPA, pre-IIRIRA immigration law, but was never advised of such relief because the court and counsel had an incorrect understanding the new laws could be retroactively applied.

The error here is even more egregious than the complained-of error in *Mendoza-Lopez* where the immigration judge had inadequately informed Mendoza-Lopez of his right to appeal the adverse deportation order. Here, I would have sought any relief had I been advised I had such avenues available to me. Moreover, I likely would have sought an appeal had such relief been denied. Yet, these were all denied to me upon the mistaken belief they were operating on the newly enacted laws which, as the Attorney General argued in *St. Cyr*,

12

denied any relief to those convicted prior to the change in the law.

c) Here, prejudice can be established.

The standard for whether prejudice is established was set forth in *Muro-Inclan* as follows: one "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." 249 F.3d at 1184, quoting *Arrieta*, 224 F.3d at 1079, citing *Arce-Hernandez*, 163 F.3d at 563; *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996).

Under this standard, or even a higher standard of actual prejudice, it is clear such prejudice would be established as I had grounds for relief under any of the many then-applicable avenues of relief from deportation had the immigration court properly advised me relief was still available. *See e.g., St. Cyr*, 533 U.S. at 296, fn. 5, 121 S.Ct. 2277, fn. 5 (in the one area of relief from deportation addressed by the Supreme Court in *St. Cyr, i.e.*, § 212(c) relief, over 50% of those applications were granted from the time period of 1989 to 1995).

The failure of the immigration judge to properly advise me of the relief that was available to me not only violated INS's own regulations, but as the Ninth Circuit found, such failure amounts to a violation of due process as his waiver of appeal was not "considered or intelligent." Accordingly, to use the results of my deportation hearing in this present case to prove that element of § 1326 violates my right to due process, and cannot be reconciled with the holdings of the United States Supreme Court in *Mendoza-Lopez* and *St. Cyr*.

13

WHEREFORE, for the above and foregoing reasons, petitioner prays this Court grant this petition and review this matter to determine whether the sentence in this case should be vacated as the underlying deportation the Government relied upon to establish that element of the present illegal reentry offense is constitutionally deficient, and cannot survive in light of the Supreme Court's decision in *Mendoza-Lopez* and *St. Cyr*.

Respectfully submitted,

Defendant-petitioner

14