IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 8 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| Respondent, § | |
| § | |
| vs. § | C.R. NO. 6:02-CV-072-C |
| § | |
| ELIAQUIN DUARTE HERRERA § | |
| Petitioner. § | |
| (C.A. No. B-02-170) § | |

**RESPONSE AND MOTION TO DISMISS HERRERA'S
MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

TO THE HONORABLE JUDGE OF THE COURT:

The United States of America, "the government", files this Response and Motion to Dismiss Eliaquin Duarte Herrera's (Herrera) Motion for Relief under 28 U.S.C. § 2255. In support thereof the government would show the court the following:

I

JURISDICTION

Herrera filed a motion for relief under 28 U.S.C. § 2255 on September 3, 2002. (Doc 13). The judgment of conviction was entered on October 12, 2001 (Doc. 12); subsequent to his conviction for for violations of 8 U.S.C. §1326(a) and (b), being found in the United States after previously having been deported. Herrera did not appeal his conviction; accordingly, his conviction became final on October 22, 2001. Herrera's motion is timely and the court is vested with jurisdiction under 28 U.S.C. § 2255.

II

## GROUNDS FOR RELIEF

In his motion for relief under 28 U.S.C. § 2255, Herrera presents the following grounds for relief:

Whether Herrera's guilty plea was involuntary

Whether Herrera's forty six months sentence exceed the maximum punishment.

Whether Herrera's Sixth Amendment right to the effective assistance of counsel on appeal was violated.

Whether Herrera's conviction is constitutionally deficient under the Supreme Court's decision in *Immigration Naturalization Service v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271 (2001).

III

## SUMMARY OF FACTS

On June 18, 2001, Herrera was arrested during a routine immigration inspection at the Sarita, Texas Border Patrol Checkpoint. (PSR 5). He presented a fraudulent Mexican electoral card bearing the name "Arturo Flores-Ortuno." (PSR 5). Herrera admitted that he was undocumented.(PSR 6). The agents conducted a record check which revealed Herrera's prior record. He had not obtained consent from the Attorney General of the United States for readmission into the United States (PSR 8).

The record reveals, that Herrera was convicted on March 15, 2000, for Trafficking in Methamphetamine in Cause No. 97-CR-308-B in Hall County, Georgia.(PSR 7) His sentence was suspended upon Herrera's deportation. (PSR 24). Following conviction, Herrera was deported to Mexico on September 13, 2000 (PSR 7).

On July 26, 2001, Herrera entered a plea of guilty to the charge of being found in the United

States after previously having been deported in violation of 8 U.S.C.§ 1326(a) and (b). (DOC 23). The court accepted Herrera's plea.

The probation officer recommended a total offense level of 21. This included a base offense of eight plus a sixteen level increase under U.S.S.G. § 2L1.2(b)(1)(A) because Herrera had been deported from the United States to the Republic of Mexico in September 2000. (PSR 14). With a three level reduction for acceptance of responsibility, Herrera's total offense level proved to be 21. (PSR ¶ 20). Herrera's extensive criminal history netted him 5 criminal history points placing him in criminal history category III.

With an offense level of 21 and a criminal history score placing him in category III, Herrera was subject to an imprisonment range of 46 to 57 months. (DOC 48). On October 5, 2001, the court sentenced Herrera to a 46-month term of imprisonment. (DOC 11).

IV.

## MOTION TO DISMISS AND AUTHORITIES

Involuntary Guilty Plea

The district court fully complied with Federal Rule of Criminal Procedure 11 when Herrera entered his plea of guilty to the indictment and ensured that his guilty plea was informed, free, and voluntary. (DOC 5). The Court advised Herrera of the nature of the charges and the consequences of his guilty plea including the range of punishment and the waiver of pertinent constitutional rights.

The record reflects that Herrera entered his plea without the benefit of any promise that his sentence would be reduced. Further, in accepting Herrera's guilty plea, the court determined that he entered it knowingly and voluntarily, with an understanding of the nature of the charges

and the consequences of his guilty plea and the understanding that no other promises had been made to induce Herrera to plead guilty. Since Herrera testified under oath at rearrangement that his plea was not induced by any promises, he had the burden to refute his prior testimony by reliable independent evidence. "The defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity," forming a formidable barrier in any subsequent collateral proceedings. *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988).

Herrera must produce independent evidence from reliable third parties showing the likely merit of his allegations. *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). As Herrera failed to present any evidence from reliable third parties that the prosecutor induced his guilty plea, Herrera did not refute his sworn testimony at the rearrangement. *Id.* See *United States v. Bounds*, 943 F.2d 541, 543 (5th Cir. 1991)(court did not abuse discretion in denying motion to withdraw guilty plea where defendant merely asserted conclusory allegations that were clearly refuted by the record); *United States v. Corbett*, 742 F.2d 173, 177 (5th Cir. 1984)(district court correctly rejected defendant's allegation that his guilty plea was induced by the government's unfulfilled promise to recommend leniency to the probation department where record contained no evidence of a subsidiary government promise to write a letter to the probation department; not only was his allegation uncorroborated, it controverted the written plea agreement that stated there was no sentencing recommendation and defendant's statements at rearraignment).

Herrera is confusing the possible maximum sentence that he may receive as inducement. Herrera admitted that he is an illegal alien in the United States after deportation. He was charged with one count of Alien unlawfully found in the United States after deportation, having been

previously convicted of an aggravated felony. The penalty for a violation of 8 U.S.C. § 1326(a) & (b) is imprisonment for not more than twenty years. Thus, he was facing a maximum sentence of 20 years. His counsel advising of how many years Herrera may serve imprisonment is not an inducement to plead guilty.

Herrera still contends that he should not have plead guilty but for his counsel's advice. Herrera even admitted to the U.S. probation officer that:

> Eliaquin Durarte-Herrera accepted responsibility for his criminal actions in the instant offense. He advised that after he was deported in September 2000, he had not returned to the United States until one week prior to his arrest. He acknowledged a prior conviction for Trafficking in Methamphetamine, an aggravated felony. (PSR 11)

Herrera's unadorned allegation of general arbitrariness must fail. It contains no suggestion that the counsel's decision was based on such a constitutionally suspect reason. Absent any such suggestion, it is difficult to see how his claim indicates anything more than his disagreement with counsel's advice.

Herrera's plea was free from coercion. He forswore any such notion during the plea of colloquy. Herrera expressly plead a single count. (DOC 5). Herrera did not question the court's authority to impose any sentence up to the statutory maximum.

As described above, the district court entered into a fairly extensive colloquy with Herrera to determine that he understood the nature of the offense to which he was pleading guilty, the consequences of his guilty plea. Assuming arguendo that the district court's admonishments were insufficient to satisfy the requirements of Rule 11(e)(2), 11(c)(1), 11(d) and/or 11(f), the Fifth Circuit reviews challenges to the district court's compliance with Rule 11 under a harmless error standard. *United States v. Morales-Sosa*, 191 F.3d 586 (5th Cir. 1999)(citing *United States*

5

*v. Johnson*, 1 F.3d 296 (5th Cir. 1993) (en banc)). Under that standard, the Fifth Circuit must determine "(1) whether the sentencing court in fact varied from the procedures required by Rule 11, and (2) if so, whether such variance affected the substantial rights of the defendant." *Id.* With regard to the substantial rights of the defendant, inquiry must be made as to "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty"; it requires this court to "examine the facts and circumstances of the case to see if [the court's omission] may reasonably be viewed as having been a material factor affecting [defendant]'s decision to plead guilty." *United States v. Williams*, 120 F.3d 575, 577 (5th Cir. 1997)(citations omitted). In making this determination, this court's review is based primarily on the record before it, "principally the transcript of the plea colloquy hearing, but also other portions of the record such as any written plea agreement, the transcript of the sentencing hearing and the sentence actually imposed." *United States v. Reyna*, 130 F.3d 104, 110 (5th Cir. 1997) (citation omitted). The court may also review post-plea colloquy sources, such as the PSR, to the extent that the information contained therein is temporally relevant to the voluntary nature of the plea and the defendant's awareness of its consequences. *Johnson*, 1 F.3d at 302; *United States v. Herndon*, 7 F.3d 55, 57 (5th Cir. 1993). A defendant's failure to allege either in the district court or on appeal that full compliance with Rule 11 would have affected his decision to plead guilty is indicative of harmless error. See *United States v. Bond*, 87 F.3d 695, 702 (5th Cir. 1996).

The record demonstrates substantial compliance with Rule 11. There is no basis for concluding that, if the court had conducted a more complete Rule 11 colloquy, it would have affected Herrera's decision to plead guilty. Cf. *United States v. Pearson*, 910 F.2d 221, 222-23

(5th Cir. 1990)(no involuntary plea or Rule 11 violation for failure of court to advise defendant of applicability of career offender guideline where attorneys advised it would not apply). On this record, it cannot be said that Herrera's substantial rights were violated by any claimed deficiency in the Rule 11 colloquy.

The record indicates that Herrera fully understood and pled to Count 1, and the Court accepted his guilty plea. "Solemn declarations in open court carry a strong presumption of verity." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Blackledge v. §Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, (1977)). In *United States v. White*, No. 00-11392 (5th Cir. September 23, 2002), the court of appeals concluded that " We will therefore hold him to his word ..". *Id.*, at 18.   Accordingly, this motion should be dismissed.

Maximum Punishment

Herrera argues that his 46 months sentence exceeds the maximum punishment for violations of 8 U.S.C. §§ 1326(a) and (b). The maximum punishment for the violation of 8 U.S.C. § 1326(a) is two years. However, §1326(b) is twenty years:

> (b) Criminal penalties for reentry of certain removed aliens
> Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--
> (1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;
> (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, **imprisoned not more than 20 years, or both;** (emphasis added)

Not only was Herrera was told by the court his maximum punishment was during Rule 11 hearing, the first page of PSR states the maximum punishment that stated the following:

>Count One: Alien unlawfully found in the United States after deportation, having been previously convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). Twenty (20) years imprisonment and/or $250,000 fine, three (3) years SRT and $100,00 special assessment.

<u>Abrogation of Herrera's right to a direct appeal</u>

Herrera asserts that his attorney abrogated his right to the effective assistance of counsel by wholly failing to perfect an appeal from the judgment of conviction and sentence despite his express desire that counsel do so. To succeed on this complaint he must show (1) that counsel's representation "fell below an objective standard of reasonableness" and (2) that "counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476-7, (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

In considering the first prong of *Washington*, the Supreme Court explained:

>[we] have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable...At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal cannot later complain that, by following his instructions, his counsel performed deficiently. The question presented lies between those poles: Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or another? *Flores-Ortega* at 477.

Counsel's performance must be deemed deficient, that is, professionally unreasonable, if counsel fails to follow the defendant's express instructions with respect to an appeal. *Id* at 478. The defendant satisfies the prejudice prong of *Strickland* if he shows that but for counsel's failure to follow his instructions, he would have appealed. *Ibid*.

Herrera's complaint rests wholly upon his self-serving averment that he requested his attorney to file an appeal in his behalf and his attorney refused. Herrera's former counsel, Mr.

8

Timoteo E. Gomez, has been contacted. Mr. Gomez recalled that this court admonished Herrera with respect to his right to appeal and the time for perfecting an appeal from the sentence and conviction. Mr. Gomez reported that he consulted with Herrera. Mr. Gomez also declared that he was never asked by Herrera to file an appeal for him. Attached your will find Mr. Gomez's letter to Herrera stating the following:

> In response to your letter of February 26, 2002, I write to inform you that you case was not appealed because I understood from you that you did not want to appeal the sentence. (Exhibit A)
>
> Mr. Gomez has agreed to file an affidavit summarizing his advice to Herrera on the merits

of an appeal.

<u>Constitutionality of the Supreme Court's decision in *Immigration Naturalization Service v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271 (2001).</u>

In this petition, Herrera attacks the sufficiency of the underlying deportation on which his conviction is predicated. He asserts this conviction is constitutionally deficient under the Supreme Court's decision in *Immigration Naturalization Service v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271 (2001).

While the Supreme court's decision in *St. Cyr* gives this Court subject matter jurisdiction to review pure questions of law concerning Herrera's claims for relief from removal, it does not support Herrera's claim to eligibility for relief from deportation under 8 U.S.C. 1182(c).

The Supreme Court's decision in *St. Cyr* considerably changed the Immigration law in the Fifth Circuit. The Court held that criminal aliens who were ordered removed in removal proceedings under the IIRIRA permanent rules and precluded from direct review in the courts of appeal by 8

U.S.C. § 1252(a)(2)(C) could obtain limited judicial review of the removal orders by habeas corpus petitions filed in district courts under 28 U.S.C. § 2241. 121 S.Ct. at 2287. This holding was fairly limited. Review is restricted to pure questions of law which could not be addressed on direct review by the courts of appeals. 121 S.Ct. at 2287. This holding overruled the Fifth Circuit's decision in *Max-George v. Reno*, 205 F.3d 194 (2000). Consequently, this Court has jurisdiction to review pure questions of law concerning Herrera's claims for relief from removal in these proceedings.

The second holding in the St. Cyr decision is that "[INA] § 212(c)[8 U.S.C. § 1182(c)] relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 121 S.Ct. at 2293. However, this holding does not support any claim to relief for Herrera because the time he served on his sentence made him ineligible for § 1182(c) relief as the law was constituted at the time of his guilty plea.

Herrera entered a plea of guilty to trafficking in Methamphetamine in the Superior Court of Hall County, Georgia on March 13, 2000. He was found guilty and sentenced to serve 15 years on that date. (PSR 24). Under the rule of law in *St. Cyr*, the AEDPA limitation on and the IIRIRA elimination of relief under 8 U.S.C. § 1182(c) could not be applied retroactively to him. His eligibility for § 1182(c) relief must be determined by the law as it stood at the time of his March 13, 2000 sentencing.

The law in effect at that time was INA Section 212(c) [8 U.S.C. § 1182(c)] as amended by Section 601 of the Immigration Act of 1990. Relief was not available to aliens who were convicted of an aggravated felony and "served a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c)(1992); *Iganacio v. INS*, 955 F.2d 295, 297 (5th Cir. 1992). Herrera's imprisonment made

him ineligible for § 1182(c) relief.

Herrera was not eligible for cancellation of removal under 8 U.S.C. § 1229b. This form of relief was created by the IIRIRA and replaced relief under the former 8 U.S.C. § 1182(c) which was repealed by the IIRIRA. However, cancellation of removal is not available to aliens convicted of aggravated felonies. 8 U.S.C. § 1229b(a)(3). Since Herrera is convicted of a drug trafficking crime, he is an aggravated felon. 8 U.S.C. § 1101(a)(43)(B). Therefore, Herrera is ineligible for cancellation of removal.

Because Herrera's aggravated felony conviction and 15 year sentence make him ineligible for any relief from removal, his removal order should be upheld by this Court under the limited review permitted by the *St. Cyr* decision. Consequently, government is entitled to judgment as a matter of law and this Court should grant government's motion for dismissal.

The government prays that Herrera's motion for relief under 28 U.S.C. § 2255 be denied and that this court enter an order dismissing this action.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

By: _____
YONG J. AN
Assistant United States Attorney
910 Travis, Suite 1500
P.O. Box 61129
Houston, Texas 77208
State Bar No. 24033612
Fed. Id. No. 29460
(713) 567-9506

## CERTIFICATE OF SERVICE

I, Yong J. An, certify that a true and correct copy of the above document has been served by placing same in the United States mail, postage prepaid, today, Nov. 14, 2002 addressed to:

Eliaquin Duarte Herrera
Prisoner No. 11295-179
Eden Detention Center
P. O. Box 605
Eden, TX 76837

Yong J. An
Assistant United States Attorney

# Exhibit A

# FEDERAL PUBLIC DEFENDER
## Southern District of Texas
### Brownsville Division
600 E. Harrison Street, #102
Brownsville, Texas 78520

**FEDERAL PUBLIC DEFENDER**
**ROLAND E. DAHLIN II**

Telephone: (956) 548-2573

Supervisory Assistant:
JEFFREY L. WILDE

Fax: (956) 548-2674

March 8, 2002

Mr. Elianquin Duarte Herrera, 11295179
K207 c/o C.C.A. T. Don
Hutto P.O. Box 1063
Taylor, Texas 76574

    In response to your letter of February 26, 2002, I write to inform you that your case was not appealed because I understood from you that you did not want to appeal the sentence.

    It is now too late to appeal, and there is nothing more I can do in this case.

    I enclose herewith a copy of the Judgment and Presentence Investigation Report which you requested.

    Good luck.

Sincerely,

TIMOTEO E. GOMEZ
Assistant Federal Public Defender
Southern District of Texas

Page #1